**CENTER FOR AUTO SAFETY et al.**

v.

**William M. COX, Individually, and as Federal Highway Administrator, et al., Appellants.**

No. 76–1922.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 19, 1977.

Decided June 9, 1978.

As Amended June 14, 1978.

Judith S. Feigin, Atty., Dept. of Justice, Washington, D. C., with whom Earl J. Sil-

bert, U. S. Atty., Rex E. Lee, Asst. Atty. Gen., Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., was on brief, for appellants.

L. Irene Bowen, Washington, D. C., for appellee. Mark Steinbach and Clarence M. Ditlow, III, Washington, D. C., were on brief for appellees.

Charles A. Miller, Washington, D. C., filed a brief on behalf of A.A.S.H.T.O., amicus curiae urging the order of the District Court be vacated. George D. Busbee, and David R. Trippe, Atlanta, Ga., filed a brief on behalf of National Governors Conference, amicus curiae urging that the order of the District Court be set aside.

Before WRIGHT, Chief Judge, and BAZELON and ROBB, Circuit Judges.

Opinion for the Court filed by ROBB, Circuit Judge.

ROBB, Circuit Judge.

In this action, begun in the District Court by Center for Auto Safety, the court held that the American Association of State Highway and Transportation Officials (AASHTO) is an advisory committee to the Federal Highway Administration (FHWA) within the meaning of the Federal Advisory Committee Act (FACA), 5 U.S.C. App. I. *Center for Auto Safety v. Tiemann*, 414 F.Supp. 215 (D.D.C.1976). The Federal Highway Administrator appeals.

AASHTO is an organization of state and federal transportation officials, established in 1914, to foster the development of a nationwide integrated transportation system. The active membership consists of the heads of the various state transportation departments. Officials of the Department of Transportation, generally from the FHWA, sit on AASHTO committees in nonvoting capacities. The Secretary of Transportation, or his designee, is a non-voting *ex officio* member of the Executive Committee, the governing body of AASHTO. AASHTO is financed by annual dues payments of its members. Dues assessments in 1976 were $318,016.10 including $5,319.00 paid by the Federal Department of Trans-

portation. Center for Auto Safety is a nonprofit corporation interested in transportation issues.

The controversy arose out of the 1973 amendments to the Federal-aid Highway Act, 23 U.S.C. § 101 *et seq.* The Act provides that states may receive federal financial assistance for highway construction, subject to supervision by the Secretary of Transportation to ensure that minimum safety standards are met. In 1973 Congress amended the Act to provide an alternative procedure whereby the Secretary may discharge his responsibility for the safety of highways built by the states with federal funds: instead of requiring federal inspectors to review each project, the Secretary may accept certification by the state that the projects "will be carried out in accordance with State laws . . . and standards which will accomplish the policies and objectives contained in or issued pursuant to this title." 23 U.S.C. § 117(a) (1976). This alternative procedure is known as "Certification Acceptance."

Shortly after the passage of the amendments, representatives of the FHWA circulated drafts of proposed regulations on Certification Acceptance to state and local governments, to the Advisory Commission on Intergovernmental Relations, and to AASHTO. Representatives of the FHWA met with AASHTO's Executive Director to discuss the proposed regulations and as a result of the meeting, forwarded "review packages" of materials on the proposed Certificate Acceptance regulations to the members of the FHWA–AASHTO Joint Committee on Directives Review, for comment. After comments were received a second draft of the regulations was prepared and FHWA officials discussed these with the Executive Director of AASHTO in April 1974. The regulations were promulgated, effective immediately,[1] on May 8, 1974.

In April 1974 the State of Georgia submitted to the Secretary a proposed Certification Acceptance plan for Georgia. In Au-

gust Center for Auto Safety submitted comments on the Georgia plan, as well as on the Certification Acceptance regulations. In September the Secretary responded by letter to the comments on the Georgia plan, and at about the same time he approved that plan, the first such state plan approved. Thereafter, Center for Auto Safety learned that AASHTO had participated in the promulgation of the Certification Acceptance regulations and, pursuant to the FACA, requested transcripts of the meetings between FHWA and AASHTO officials. When the request was denied the Center filed this suit.

Center for Auto Safety alleged that the Secretary had violated the rulemaking requirements of the APA in promulgating the Certification Acceptance regulations and in approving the Georgia plan; that the FHWA consultation with AASHTO concerning the proposed regulations had violated the Federal Advisory Committee Act; and finally that the approval of the Georgia plan had violated the requirements of the Federal-aid Highway Act.

Holding that the Federal-aid highway program is a grant program exempt from the rulemaking requirements of the Administrative Procedure Act, 5 U.S.C. § 553(a)(2), the District Court dismissed the counts of the complaint alleging violations of the APA. On the claim under the Advisory Committee Act, the District Court granted summary judgment in favor of the Center for Auto Safety and enjoined further meetings between representatives of the Federal-aid highway program and AASHTO without compliance with "all of the requirements of the Federal Advisory Committee Act." The court deferred judgment on the claim that the approval of the Georgia plan violated the requirements of the Federal-Aid Highway Act, pending the filing of the administrative record. The Administrator appeals from the ruling on the Federal Advisory Committee Act claim. *See* Fed.R.Civ.P. 54(b).

---

1. The Administrator did not comply with the provisions of the Administrative Procedure Act regarding notice and comment because he con- sidered the Certification Acceptance regulations to be part of a grant program exempted from the APA under 5 U.S.C. § 553(a)(2).

Because we conclude that the FHWA utilized AASHTO as an advisory committee during the development of the Certification Acceptance regulations, we affirm. We agree with the Administrator, however, that the District Court's order is too broad. Accordingly, the injunction must be modified to apply the Federal Advisory Committee Act only to consultation between the FHWA and AASHTO on matters concerning proposed regulations.

## I.

The Federal Advisory Committee Act sets out a comprehensive scheme to control the creation and operation of advisory committees in the executive branch of the federal government. The Act broadly defines an advisory committee as

> any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof (hereafter in this paragraph referred to as "committee"), which is—
>
> (A) established by statute or reorganization plan, or
>
> (B) established or utilized by the President, or
>
> (C) established or *utilized by one or more agencies*, in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government . . .

5 U.S.C. App. I § 3(2) [emphasis added].

The District Court held that AASHTO had been "utilized by" the FHWA as an advisory committee because FHWA officials met on several occasions with AASHTO officials to discuss the proposed Certification Acceptance regulations and because a "review package" of the proposal was sent to members of AASHTO's Directives Review Committee for comment.

The Administrator contends that the District Court erred in failing to give effect to two exceptions in the Act limiting the definition of an advisory committee. The first exception exempts "any committee which is composed wholly of full-time officers or employees of the Federal Government," 5

U.S.C. App. I § 3(2)(iii) and the second exempts "any State or local committee, council, board, commission, or similar group established to advise or make recommendations to State or local officials or agencies," *id.* § 4(c). The Administrator argues that taken together sections 3(2)(iii) and 4(c) indicate a clear congressional intent to exclude from FACA all groups of government employees. Therefore, the argument goes, "[i]t makes no sense to hold that AASHTO—a hybrid composed of both state and federal employees . . .—is somehow, because of this mixture, within the Act's coverage." (Brief at 19) But we think it makes even less sense to infer that if Congress intended to exclude all groups of government employees it would choose such a convoluted route as sections 3(2)(iii) and 4(c) to express that intent. More important, as will be seen, section 4(c) does not exclude all groups of state officials.

To qualify for exemption under section 4(c) AASHTO must meet two conditions: it must be a state or local committee and it must be established to advise or make recommendations to state or local agencies. We doubt whether a nationally oriented organization like AASHTO could meet the first requirement, but assuming it could, there is no doubt that it does not meet the second.

The Administrator asserts that AASHTO is simply a clearinghouse for the transmission of views and ideas between the states and the federal government. We think this characterization is too modest. AASHTO's constitution states its purpose to foster the development of a nationwide, integrated transportation system; its by-laws charge its policy committee with preparing official positions on legislative proposals. AASHTO representatives testify regularly before Congress on matters affecting transportation. The list of FHWA design standards for Federal-aid highways reads like an index to AASHTO publications. 23 C.F.R. Part 625 (1977). A former AASHTO member who became the Federal Highway Administrator has commented upon AASHTO–FHWA cooperation:

Certainly the Federal-State relationship is well demonstrated in the development of highway design and similar policies. Over the years, they have been produced by committees of the American Association of State Highway Officials and upon adoption by the Association have been accepted by the Bureau of Public Roads. This, too, has been a partnership process since Public Roads personnel have served as working members of the AASHTO Committees, at their request. Thus, the States and Public Roads are in contact, while policies and their application are being formulated.

R. M. Whitton, in *American Highways* 34 (Jan. 1965).

In 1970 the FHWA and AASHTO organized a Joint Committee on Directives Review [2] "to offer the experience of the State highway people in reviewing tentative or draft memoranda or regulations for the highway program in advance of their being implemented and to review existing procedures." [3] As the District Court found, "a significant part of AASHTO's *raison d'etre* is to offer advice, often solicited, to the federal government." 414 F.Supp. at 225. It is apparent, therefore, that insofar as AASHTO is involved with the FHWA, it cannot qualify under section 4(c) as a state or local committee making recommendations to a state or local agency.

The Administrator and AASHTO would avoid this conclusion by arguing that the phrase exempting committees "established to advise or make recommendations to State or local officials or agencies" means state *or federal* agencies. They reason that because Congress has no power to regulate state committees operating at the state level, there is no need to exempt such groups from coverage under the Act. Thus the exemption in section 4(c) would be meaningless, they contend, unless the court reads it to preclude coverage of state groups con-

ferring with agencies at the state *or federal* level. The argument is unsound.

■ The plain meaning of section 4(c) is clear. Moreover, as a proviso, it should be construed narrowly. A plausible interpretation, and one that does not do violence to the plain meaning rule, is that Congress intended to include state and local committees under the Act only when they functioned at the federal level. It would be unreasonable to hold that Congress cannot expressly disavow an intent to regulate activity that may lie beyond its enumerated powers and to use this holding to read out of the Act activity that Congress clearly may regulate. We note finally that the legislative history in no way contradicts our conclusion that the plain meaning of section 4(c) should prevail. We therefore decline to insert the words "or federal" into the otherwise clear section 4(c) to rescue it from the lack of meaning envisioned by the Administrator and AASHTO.

■ Amicus AASHTO argues that the regulatory scheme of the Act indicates that Congress did not intend to include independent, pre-existing organizations such as itself. Various sections of the Act, referred to by AASHTO, provide for committee charters, balanced membership, open meetings chaired by a federal official, OMB review, and automatic termination of committees unless extended. These provisions, AASHTO observes, could not apply to it. The difficulty with this argument is that the Act does not regulate AASHTO; it regulates the FHWA's use of AASHTO as an advisory committee. When an administrator establishes or utilizes an advisory committee, he must comply with the provisions of the Act; it makes no difference whether the committee is his own creation or a pre-existing group. Because some provisions would apply only to an advisory committee created by the Administrator, it does not follow that an existing group, uti-

---

**2.** As a result of the District Court's decision FHWA no longer uses this committee.

**3.** Red Tape—Inquiring Into Delays and Excessive Paperwork in Administration of Public Works Programs: Hearings before the Sub-

comm. on Investigations and Oversight of the House Comm. on Public Works, 92 Cong., 1st Sess. 100 (1971) (statement of AASHTO President W. J. Burmeister).

lized by the Administrator, is exempt from all the provisions of the Act. Therefore, we find nothing in the regulatory scheme of the Act to suggest that Congress intended to exclude organizations fitting the definition of advisory committee from coverage simply because they have an existence independent of the agency utilizing them.

█ Nor does our construction of the Act interfere with first amendment freedoms, as AASHTO suggests. We see no "serious constitutional problems inherent in [the] application of FACA . . . to independent organizations [like AASHTO] acting as spokesmen for their members." (AASHTO Br. at 31) AASHTO and its members remain free to communicate their views to the Administrator. They remain free to lobby the FHWA. Congress has determined simply that when a federal executive official utilizes an advisory committee to assist him in discharging his responsibilities, in most instances he must do so openly and publicly. AASHTO has no First Amendment right to have the Administrator keep its communications secret.

The issue then, is not whether the application of the FACA to independent organizations offends the rights of those organizations to communicate with the government; it is whether the Administrator has in this case "utilized" AASHTO as an advisory committee. No single factor determines this issue, and we intimate no view as to the range of relevant factors. We hold only that when the Administrator in the course of developing regulations to govern the Federal-aid highway program discloses his proposed regulations to select groups and obtains their advice and recommendations, he utilizes those groups as advisory committees. *Cf. Nader v. Baroody*, 396 F.Supp. 1231, 1234 (D.D.C.1975), *vacated as moot*, No. 75–1969 (D.C. Cir. Jan. 10, 1977).

4. *See e. g.*, 23 U.S.C. § 109(h), (i), *id.* § 116(d); *id.* § 138; *id.* § 321(a); *id.* § 322(e); *id.* § 402.

5. We need not decide at this time which other contacts between FHWA and AASHTO constitute "utilization" of AASHTO by FHWA as an advisory committee. In this regard, however,

## II.

█ The District Court ordered that "any future meetings between representatives of the federal government and officials of AASHTO in the interest of obtaining from AASHTO advice or recommendations on any aspect of the Federal-aid highway program shall be subject to all of the requirements of the Federal Advisory Committee Act . . . ." (J.A. 111–12) The Administrator argues that this order has hamstrung much of the cooperation that heretofore existed between federal and state transportation officials, often mandated by statute.[4] We agree that the District Court's order is too broad. This case arose out of consultation by the FHWA with AASHTO over the proposed Certification Acceptance regulations; it is in this context that AASHTO functioned as an advisory committee. Plaintiffs have neither alleged nor proved that all contacts between FHWA and AASHTO constitute "utilization" of AASHTO as an advisory committee. The District Court recognized that "depending on their specific activities, advisory groups can have shifting identities for purposes of the Advisory Committee Act; i. e., they can serve as advisory committees within the meaning of the Act while performing certain functions and, on other occasions, fall outside the ambit of the Act." 414 F.Supp. at 225 n.11. The court failed, however, either to specify adequately the range of contacts between FHWA and AASHTO to which its order would apply or to outline which provisions of FACA would apply to these contacts. We therefore remand this case so that the District Court may (1) tailor its order to apply more narrowly to the specific facts of this case—consultation between FHWA and AASHTO in the interest of obtaining advice or recommendations for FHWA on proposed regulations[5]—and (2)

we note the memorandum prepared by FHWA's Acting Chief Counsel in response to the District Court's original order applying FACA to "any future meetings between representatives of the federal government and officials of AASHTO in the interest of obtaining from AASHTO advice or recommendations on

specify more clearly which provisions of FACA apply to these contacts.[6]

*So ordered.*

any aspect of the Federal-aid highway program . . . ." *See* Memorandum from Dowell H. Anders, Acting Chief Counsel, Federal Highway Administration, to Norbert T. Tiemann, Federal Highway Administrator, *Re: Compliance with Court Order in Center for Auto Safety v. Tiemann,* May 13, 1976.

**6.** Appellees seem interested primarily in the procedural provisions of FACA requiring open meetings after public notice in the Federal Register and accurate record-keeping of the matters discussed in such meetings. *See* Complaint for Declaratory Judgment, Injunctive, and Other Relief, J.A. 18–19. These provisions also appear to be those most logically applicable to advisory committees that are utilized by, but not created by, government agencies.