**HLI LORDSHIP INDUSTRIES,
INC. (Plaintiff),**

v.

**The COMMITTEE FOR PURCHASE FROM THE BLIND & OTHER SEVERELY HANDICAPPED; Charles W. Fletcher; Secretary of Defense; National Industries for the Severely Handicapped (Defendants),**

and

**National Industries For the Blind (Intervenor-Defendant).**

**Civ. A. No. 85–0283–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 8, 1985.

Barry J. Trilling, Trilling & Kennedy, Washington, D.C., for plaintiff.

Elsie L. Munsell, U.S. Atty., Alexandria, Va., David M. Glass, Washington, D.C., for defendants.

H. Dudley Payne, Arlington, Va., for Nat. Industries for the Blind.

Joseph C. Luman, Luman & Schoor, Washington, D.C., for Nat. Industries for the Severely Handicapped.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This case involves a challenge to a decision by the Committee for Purchase From the Blind and Severely Handicapped to take particular medals and medal sets out of competitive bidding. Plaintiff is a small New York corporation in the business of manufacturing and supplying military decorations and insignia to the United States government. Raising a number of arguments, plaintiff challenges the Committee's determination that the medals and medal sets are commodities suitable for procurement by the government from qualified nonprofit agencies for the blind or other severely handicapped. The case comes before the Court on the parties' cross motions for summary judgment.

## FACTS

Pursuant to the Javits-Wagner-O'Day Act, 41 U.S.C. § 46 *et seq.* ["JWOD Act"], Congress established a program to increase the opportunities for employment of blind and other severely handicapped individuals. The Act establishes the Committee for Purchase From the Blind and Severely Handicapped ["Committee"] as the federal agency authorized to establish and publish a list consisting of commodities and services which it determines are suitable for procurement from the blind or other severely handicapped. Once a commodity or service is placed on the procurement list, the federal government must procure that item or service from a qualified nonprofit agency rather than through competitive bidding. The Committee makes its decisions pursuant to the notice and comment procedures found in the Administrative Procedure Act, 5 U.S.C. § 553 ["APA"]. *See* 41 U.S.C. § 47(a)(2).

To facilitate the distribution of the government orders among qualified nonprofit agencies, Congress required the Committee to designate central nonprofit agencies for assistance. 41 U.S.C. § 47(c). Pursuant to this mandate, the Committee designated the National Industries for the Blind [NIB] and the National Industries for the Severely Handicapped [NISH]. Both are nonprofit, District of Columbia corporations and, in effect, they provide much of the administrative support for the program. By regulation, NIB and NISH investigate what items or services may be appropriate for placement on the procurement list, recommend items and services for the Committee to consider, administer the Committee's decisions, and monitor the participating nonprofit workshops. 41 CFR § 51–3.2.

In January 1983, NISH advised the Committee that the government could purchase some of its decorative military medals from Elwyn Industries, a nonprofit agency for the severely handicapped headquartered in Pennsylvania. After considering this recommendation, on January 21, 1983, the Committee published a proposal to purchase eight World War II vintage medals and medal sets from the severely handicapped. In response, the Committee received many comments, including a submission from plaintiff objecting to the proposal

on a number of grounds. Because no action was taken for several months, on October 14, 1983, the Committee republished its proposal, although this time it included only 7 of the original 8 medals and medal sets. Plaintiff then submitted further comments objecting to the Committee's proposal that would take the medals and medal sets out of competitive bidding.

Many but not all of plaintiff's comments were forwarded to Committee members. On December 1, 1983, five members of the Committee attended a meeting at which plaintiff orally presented its opposition to the proposal. Further submissions as well as a written summary of plaintiff's oral presentation were then sent to all 14 Committee members. The Committee voted on the proposal, approving by a 12 to 2 vote the placement of the 7 medals and medal sets on the procurement. The Committee published its decision on January 27, 1984.

Since the Committee's decision, the government has purchased a significant number of medals and medal sets from Elwyn Industries, the nonprofit workshop for the severely handicapped. On November 2, 1984, plaintiff filed this lawsuit challenging the Committee's decision. For the reasons stated below, the Court grants the defendants and the intervenor-defendant summary judgment.

## DISCUSSION

Plaintiff challenges the Committee's decision on a number of grounds. In essence, there are three groups of arguments. First, plaintiff claims that the Committee's approval of the proposal was unlawful. Second, plaintiff asserts that the Committee unlawfully delegated its power to NISH and NIB. Third, plaintiff claims that both the Committee and NISH have violated the Federal Advisory Committee Act, 5 U.S.C. App. 2, § 1 *et seq.* [FACA]. Each set of arguments will be discussed in turn.

### 1. *The Committee's Decision*

In support of its contention that the Committee's decision was unlawful, plaintiff argues that the decision was arbitrary and capricious as well as violated APA procedures, various internal Committee rules and the United States Constitution.

In support of its contention that the decision was arbitrary and capricious, plaintiff asserts first that Elwyn Industries is not a qualified nonprofit agency as defined in the JWOD Act and, second that the Committee did not adequately consider the impact of its decision on plaintiff.[1]

The JWOD Act establishes that once the Committee places a commodity or service on the procurement list the government can only procure that commodity or service from a "qualified nonprofit agency." 41 U.S.C. § 47(a)(1)(A) and (B). The Act defines such an agency as one which "in the production of commodities and in the provision of services ... during the fiscal year employs blind or other severely handicapped individuals for not less than 75 per centum of the man-hours of direct labor required for the production or provisions of the commodities or services." 41 U.S.C. § 48b. *See also* 41 CFR § 51–1.3(i). Plaintiff contends that the Committee's decision to place the 7 medals and medal sets on the procurement list was an abuse of discretion because the new source of the medals and medal sets, Elwyn Industries, is not a qualified nonprofit agency as defined by the JWOD Act.

All parties agree that over 75 percent of Elwyn Industries' employees who work on the medals and medal sets are severely handicapped. Moreover, all parties agree that these employees assemble various components of the medals and medal sets. Where the parties disagree, however, is how to apply the qualified nonprofit agency definition to the work done at Elwyn Industries.

---

**1.** At oral argument, plaintiff conceded that there was sufficient evidence in the administrative record for the Committee to conclude that plaintiff would not be seriously harmed by a decision in favor of the proposal. However, because plaintiff raised this objection in its written motion for summary judgment, the Court addresses it here.

Plaintiff contends that the JWOD Act requires that at least 75 percent of the labor needed to produce the entire commodity, including its component parts, must be done by the severely handicapped. Because Elwyn Industries' severely handicapped employees assemble rather than actually produce the components of the medals and medal sets, plaintiff argues that it is not a qualified nonprofit agency as contemplated by the Act. Plaintiff argues that Congress intended to bestow preferential treatment on handicapped individuals when they do substantially all the work on the item in question. Otherwise, the severely handicapped or the blind only receive a negligible benefit because most of their earnings must be used to purchase the component parts from subcontractors.

In response, defendants assert that Elwyn Industries is a qualified nonprofit agency because over 75 percent of the labor done by the workshop, albeit assembly, is done by the severely handicapped. Defendants argue that the JWOD Act makes clear Congress's intent to increase the opportunities afforded to this disadvantaged segment of society, including opportunities to assemble component parts. Furthermore, defendants contend that nothing in the JWOD Act or in the regulations promulgated by the Committee requires the application of the 75 percent rule to the production of all the components of an item placed on the procurement list. Given congressional intent to help the blind and severely handicapped, defendants argue for a more liberal interpretation of when a workshop is a qualified nonprofit agency.

■ The Court agrees with defendants. The Committee's interpretation of the term "qualified nonprofit agency" is neither arbitrary nor capricious, for congressional intent mandates the more liberal application of the 75 percent requirement. In order to provide employment opportunities for the blind and other severely handicapped, assembly of component parts must qualify as production of an item on the

procurement list. Otherwise, the blind and severely handicapped may very well be foreclosed from many if not all employment opportunities. Because over 75 percent of the man-hours of direct labor needed to assemble the medals and medal sets is done by severely handicapped employees, Elwyn Industries is a qualified nonprofit agency under the JWOD Act. The Committee did not abuse its discretion when it made this determination.

■ Plaintiff next challenges the Committee's decision as an abuse of discretion on the basis that the Committee failed to consider the serious adverse impact of its decision on plaintiff. By regulation, the Committee must consider whether there is such an impact on the current or most recent contractor when it places a particular item or service on the procurement list. 41 CFR § 51–2.6(d). No one disputes that plaintiff was the most recent supplier of at least some of the medals and medal sets. However, it is clear from the record that the Committee considered the impact of its decision on plaintiff and reasonably determined that it was not serious enough to warrant voting against the proposal.[2] The Committee did not abuse its discretion when considering the impact of its decision on plaintiff.

■ Next the Court turns to plaintiff's assertion that the Committee's decision violated APA procedures as well as internal Committee rules. First, plaintiff contends that the Committee did not consider all the evidence plaintiff submitted in support of its position. Section 553(c) of the APA, however, does not require an administrative decisionmaker to consider every piece of paper submitted by the public. Rather, the administrator must consider all relevant material and can delegate detailed consideration of the submissions to subordinates. *Nat. Small Shipments Traffic Conf., Inc. v. I.C.C.*, 725 F.2d 1442 (D.C. Cir.1984). In this case, the Committee considered the relevant information submitted

**2.** The evidence in the administrative record is that plaintiff would suffer a 7.3 percent loss of

overall business if the Committee placed the 7 medals and medal sets on the procurement list.

by plaintiff. The Committee received many of the plaintiff's letters, written summaries of plaintiff's objections (compiled by the Committee's staff) and a written summary of plaintiff's oral objections. Moreover, the Committee did not violate its own internal procedures in its consideration of plaintiff's submissions. An agency is entitled to a measure of deference in administering its own procedural rules. *American Farm Lines v. Black Ball Freight,* 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970). The Committee had the necessary information for its decision and any error that may have occurred was harmless.

■ Similarly, the Committee did not violate the APA when it published its statement explaining the basis of its decision. Section 553(c) of the APA requires the Committee to publish a concise general statement of the basis and purpose of a decision to place a commodity or service on the procurement list. The Committee did so in this case. The Committee is not required to discuss every fact or opinion contained in the public comments. The fact that it did not discuss its interpretation of "qualified nonprofit agency" is not prejudicial error if error at all. *State of South Carolina ex rel. Tindal v. Block,* 717 F.2d 874, 885 (4th Cir.1983).

■ Moreover, the Committee did not violate its own internal rules by not automatically suspending action on the proposal when two of its members voted against it. Paragraph 3(c)(2) of the Committee's Administrative Memo No. 3 states that when an objection to a proposal is confirmed in writing, for example when a Committee member votes against a particular proposal, that objection is to be circulated to all other Committee members who then are asked to reconsider their votes in light of the objection. In this case the internal rule was not violated because the Committee staff's Executive Director asked the two dissenters if they wanted their objections circulated. He was told that they did not. The Committee members did not have information to circulate. Moreover, they had decided to abide by the majority's decision.

Given these circumstances it was reasonable for the Executive Director to not circulate the objections. Again, an agency is entitled to a measure of deference in administering its own procedural rules. *American Farm Lines,* supra.

■ Plaintiff also asserts that the Committee's decision to place the 7 medals and medal sets on the procurement list was unlawful because one of the Committee members voting for the proposal was concurrently on the Board of Directors of NISH. Plaintiff contends that this is an untenable conflict of interest because NISH has a financial interest in the Committee's approval of proposals. Upon the approval of a proposal, NISH receives a 4 percent commission fee. 41 CFR §§ 51–3.5, 4.3(a)(8).

■ The Court does not find this situation to rise to the level of a due process violation as asserted by plaintiff. No doubt the better practice is the one that exists today—Mr. Earl Cunerd, a member of NISH's Board of Directors, is no longer a member of the Committee. However, even when he held both positions, the Committee's decisionmaking remained valid. Under the APA, the Committee's decision qualifies as rulemaking as opposed to adjudication. Rulemaking is a less formal procedure that is entitled to a presumption of administrative regularity. *Association of Advertisers, Inc. v. F.T.C.,* 627 F.2d 1151 (D.C.Cir.1979). Mr. Cunerd did not have a direct financial interest in the Committee's decision; moreover, it was Congress's intent to have the interests of handicapped workers represented on the Committee. *See* 41 U.S.C. § 46(a)(2). His one vote in favor of the proposal did not render the Committee's decision biased or unlawful.

■ Finally, the Court reaches plaintiff's argument that the Committee's decision was unconstitutional because it constituted a taking of property without due process of law. This argument also lacks merit. There is no property right to government contracts. *Gonzalez v. Freeman,* 334 F.2d 570 (D.C.Cir.1964). The

Committee's decision to place the seven medals and medal sets on the procurement list did not violate the United States Constitution.

### 2. *The Committee's Delegation to NISH and NIB*

The second group of challenges raised by plaintiff rest on the contention that the Committee has unlawfully delegated its power to the central nonprofit agencies NISH and NIB. Plaintiff asserts that because NISH and NIB have a financial interest in the proposals approved by the Committee, they should not have the power to investigate and recommend what commodities and services the Committee should consider for placement on the procurement list. Plaintiff argues that this delegation of authority to NISH and NIB violates congressional intent under the JWOD Act.

 The Court, however, cannot reach these issues because plaintiff lacks standing to assert them. In *Motor Coach Industries Inc. v. Dole*, 725 F.2d 958 (1984), the Fourth Circuit clearly stated the test for determining whether a plaintiff has standing to challenge this type of administrative action. Plaintiff must establish 1) an injury in fact traceable to defendants' action, 2) that the injury is substantially likely to be redressed by a favorable decision of this Court, and 3) the interest plaintiff seeks to further is within the zone of interest to be protected or regulated by the statute in issue. Plaintiff lacks standing to challenge the Committee's delegation of authority under the JWOD Act because it falls outside the zone of interest furthered by the Act.

The Fourth Circuit recently addressed the zone of interest test in *Leaf Tobacco Exporters Ass'n., Inc. v. Block*, 749 F.2d 1106 (1984). In that case the Fourth Circuit stated that a court must examine the critical relationship between Congress's purpose in passing the particular act in question and the plaintiff's interest in challenging a decision made pursuant to that act, in order to determine whether plaintiff's interest is one with which Congress

was concerned. The question in this case is whether, in the JWOD Act, Congress exhibited some interest in regulating or protecting small businesses such as plaintiff's, which in turn gives plaintiff standing to challenge the promulgated regulations.

Having carefully reviewed the provisions of the JWOD Act and the legislative history, the Court finds that there is insufficient evidence to support a finding that plaintiff falls within the zone of interest of the Act. Congress passed the JWOD Act with the clear intent to increase employment opportunities for the blind and other severely handicapped. 41 CFR § 51–2.2; *Barrier Industries, Inc. v. Eckard*, 584 F.2d 1074 (D.C.Cir.1978). The provisions of the Act and its legislative history illustrate Congress's intent to protect the interests of these individuals as well as the interest of the nonprofit agencies for which they work. *Id.*, 41 U.S.C. § 46(a)(2); H.R.Rep. No. 228, 92d Cong., 1st Sess., 2 (1971), *reprinted in* 1971 U.S.Code Cong. & Ad. News 1079. The only portions of the JWOD Act exhibiting any intent to protect able bodied businesses are 41 U.S.C. § 47(a)(2), which states that the Committee must adhere to informal rulemaking procedures, and Committee regulation 41 CFR § 51–2.6(d), which states that one factor the Committee must consider in making a determination is whether its decision will have a serious adverse impact on the current or most recent contractor. Standing alone, these provisions are not sufficient evidence of Congress's intent to protect able bodied businesses under the Act. The zone of interest of the JWOD Act covers the blind and the other severely handicapped, not plaintiff. Therefore plaintiff lacks standing to challenge the Committee's delegation of authority to NISH and NIB.

### 3. *The Committee and FACA*

The third and final set of arguments raised by plaintiff rest on a contention that the Committee and NISH have failed to comply with the Federal Advisory Committee Act. In essence, plaintiff argues that NISH is an advisory committee as contem-

plated by FACA and, therefore, it as well as the Committee must comply with the requisite procedures established by that Act.

■ In this instance, the Court must reach the merits of plaintiff's claim. Contrary to the defendants' contention, plaintiff has a cause of action to assert FACA violations. Although not explicitly stated in the Act, many Courts have recognized an individual's or group's right to challenge an alleged violation of FACA. *See e.g. National Nutritional Foods Ass'n. v. Califano*, 603 F.2d 327 (2d Cir.1979); *Center for Auto Safety v. Cox*, 580 F.2d 689 (D.C.Cir. 1978); *National Anti-Hunger Coalition v. Executive Committee*, 557 F.Supp. 524 (D.D.C.1983). The Court does not see any reason why it should depart from this precedent.

Similarly, plaintiff has standing to bring its FACA claim, for it satisfies the three part test in *Motor Coach*. Plaintiff has an injury in fact based on the Committee's decision to place the medals and medal sets on the procurement list without abiding by FACA procedures. That injury could be remedied if the Court invalidated the Committee's decision. And, plaintiff's interest falls within the zone of interest of FACA. No party disputes that FACA was passed by Congress in order to control the advisory committee process and to open to public scrutiny the manner in which government agencies obtain advice from private individuals and groups. *See* 5 U.S.C. App. 2 § 2. Therefore plaintiff, as a member of the public, has an interest protected by the statute.

■ Given that plaintiff has a cause of action as well as standing, the Court must address the issue whether NISH is a advisory committee subject to FACA's provisions. The issue is a difficult one; however, after reviewing the Act and the regulations promulgated by the General Services Administration, the Court determines that NISH is not an advisory committee as contemplated by the Act.

In section 3 of FACA Congress defined the term "advisory committee" as "any committee, board, commission, council, conference, panel, task force, or other similar group ...., which is—(A) established by statute or reorganization plan, or (B) established or utilized by the President, or (C) established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government ...." The regulations promulgated pursuant to the Act adopts this definition. 41 CFR § 101–6.1003. Moreover, in 41 CFR § 101–6.1004(i), GSA states that an example of a group *not* covered by the Act is a "... committee which is established to perform primarily operational as opposed to advisory functions, except that such committee may be covered by the Act if it becomes primarily advisory in nature ...." The issues before this Court are whether NISH was 1) established by statute or utilized by an agency, and 2) primarily advisory or operational in function.

The Court does not reach the issue of how NISH was established or utilized because it finds that this central nonprofit agency is primarily operational in function and, therefore, does not fall within the purview of the Act. No one disputes that NISH, pursuant to regulation, recommends commodities and services for the Committee to consider for placement on the procurement list. Similarly, no one disputes that NISH also recommends a price for the item or service procured from the blind or other severely handicapped. However, when the functions of NISH are studied as a whole, it is clear that its advisory capacity is secondary to its operational activities. NISH not only recommends commodities, services and prices for consideration, but also investigates what items may be suitable for procurement from the blind and handicapped, evaluates the qualifications and capabilities of the workshops who offer the commodities and services, distributes government orders for items off the procurement list among the various qualified workshops, maintains the necessary administrative records for the JWOD Act program, and monitors and inspects the various participating workshops in order to insure compliance with the Act. In other words, NISH is one of the operational

backbones of the JWOD program, thereby increasing opportunities for blind and other severely handicapped employment. NISH's function is primarily operational and, therefore, it is not an advisory committee subject to FACA's regulations.

In summary, the Court awards summary judgment in favor of the defendants and the intervenor-defendant because the Committee's decision to place the 7 medals and medal sets on the procurement list was neither arbitrary nor capricious, nor was it in violation of the Constitution, the Administrative Procedure Act, the Committee's internal regulations or the Federal Advisory Committee Act. As stated above, plaintiff does not have standing to challenge the Committee's delegation of authority to NISH and NIB. Therefore, the Court does not reach the merits of this issue.