**WASHINGTON LEGAL FOUNDATION, Plaintiff,**

v.

**AMERICAN BAR ASSOCIATION STANDING COMMITTEE ON the FEDERAL JUDICIARY, Robert B. Fiske, Jr., Ralph I. Lancaster, Jr., Robert MacCrate, Jerome J. Shestack, James A. Howard, Sr., Gene W. Lafitte, John C. Elam, Joan M. Hall, James W. Hewitt, John Gavin, Samuel L. Williams, James A. Clark, M. Roland Nachman, Jr., John D. Lane, American Bar Association, William W. Falsgraf, Defendants.**

Civ. A. No. 85–3918.

United States District Court, District of Columbia.

Nov. 26, 1986.

Daniel J. Popeo, Paul D. Kamenar, Alan M. Slobodin, Washington, D.C., for plaintiff.

Rex E. Lee, Ronald S. Flagg, Sidley & Austin, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS. GREEN, District Judge.

In its complaint, the plaintiff, Washington Legal Foundation ("WLF"), has alleged that the Federal Advisory Committee Act ("FACA"), 5 U.S.C.App. II, and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, apply to defendants. For the reasons set forth below, defendants' motion to dismiss is granted.

### I.  *Background*

WLF is a non-profit public interest law center incorporated under the laws of the District of Columbia. It contends that it "has engaged in activities designed to improve the judiciary and wishes to participate in the federal judicial selection process." *Id.* The defendants, members of the American Bar Association Standing Committee on the Federal Judiciary ("ABA Standing Committee" or "Committee"), are an incorporated association established under the bylaws of the American Bar Association. The ABA Standing Committee consists of fourteen members; two members are selected from the Ninth Circuit, one member from each of the other eleven judicial circuits, and one member selected at large. The Committee is a private entity which does not receive funds or financial support from any government agency. Other defendants are the American Bar

Association, an unincorporated association, its President, William W. Falsgraf, and unidentified John Doe(s) who are alleged to have acted on behalf of the Committee in the same capacity as one of its members, but was not then a member of the Committee.

Since 1948 the ABA Standing Committee has reviewed the professional qualifications of individuals "identified by the President, through the United States Department of Justice, as possible nominees" for a federal judgeship. Defendants' Motion to Dismiss at 5. *See also* Appendix B at 1, attached to Defendants' Motion to Dismiss. The review process has traditionally involved confidential interviews with lawyers, judges, and professors in the nominee's community, close scrutiny of the nominee's legal writings, and talks between Committee members and the nominee over the nominee's qualifications. All details of the review process and the identity of those asked to discuss a nominee's qualifications are kept confidential by the ABA.

The use to which this review is put lies at the heart of this lawsuit.[1] At the conclusion of the "information gathering" stage of the process a confidential final report is submitted to the Committee chairman accompanied by one of four recommended ratings: "exceptionally well qualified," "well qualified," "qualified," or "not qualified." Each member of the Committee must then vote on a "final" rating to be given the nominee. The results of the Committee's decision are thereafter disclosed to the Department of Justice. Only the rating is revealed. The contents of the report remain confidential.

The plaintiff contends that because the ABA Standing Committee's recommendations are utilized by the Department of Justice, the Committee constitutes an "advisory committee" as defined by FACA. As such, the plaintiff argues, the Committee is required (1) to "provide reasonable

advance public notice of [its] meetings," (2) "open [its] meetings to the public," (3) "provide [the] plaintiff and the public [with] access to its [the Committee's] records," and (4) provide "a fairly balanced membership of the ... Standing Committee ... in terms of points of view represented and functions to be performed." Complaint ¶ 1.

Characterizing defendants as an advisory committee, WLF contends that the Committee's investigations "have been conducted and are continuing to be conducted in such a way as to penalize or discredit candidates who hold or profess conservative principles or ideology, and to delay or prevent their nomination by the President." Complaint ¶ 26. WLF further argues that it has requested reports and minutes of meetings conducted by the Committee in its capacity as an "advisory committee" to the Department of Justice, *see id.* ¶ 36, and has been denied that information, *id.* ¶ 39; and that it has requested and has been denied permission to "participate in the [ABA's] judicial selection process ... to ensure the fairness of the proceedings." Complaint ¶¶ 35, 39. The plaintiff asserts that because the defendant ABA Standing Committee constitutes an advisory committee within the meaning of FACA, WLF is now entitled to injunctive relief enjoining defendants from conducting any further meetings or otherwise evaluating any candidates for judicial office until they comply with all the provisions of the FACA by (1) providing reasonable advance public notice of all future meetings; (2) opening their meetings to the public; (3) recomposing the membership of the Committee so that it is fairly balanced in terms of points of view represented; (4) filing an advisory committee charter with the Director of the Office of Management and Budget and Department of Justice; (5) designating a federal officer or employee to attend and call for or approve of all meetings of the Committee; (6) keeping detailed minutes of each

---

1. During the pendency of this motion, plaintiff filed a related action against the government, *Washington Legal Foundation v. United States Department of Justice,* No. 86–2883, again challenging the Justice Department's use of the ABA Standing Committee's reviews. The government has not as yet responded.

meeting as required by FACA; and (7) making their records available to the public.

In response to the plaintiff's contentions the defendants have filed two motions to dismiss. In the first they argue that the Standing Committee is not an entity capable of being sued, and that the Committee's individual members do not fall within the scope of FACA. By agreement of the parties, resolution of that motion has been appropriately deferred pending determination of the second motion to dismiss. It is the latter motion that is now before the Court.

## II. *Analysis*

The defendants assert essentially three arguments in support of their position. First, they argue that the plaintiff lacks standing to raise "key allegations" in its complaint. Motion to Dismiss at 10. Specifically, the defendants contend that the plaintiff's alleged interest in a "more balanced" ABA Standing Committee and a "more balanced federal judiciary" is too "speculative" and "attenuated" to confer standing under § 5 of FACA. Motion to Dismiss at 13, 14. Second, the defendants argue that the plaintiff's construction of FACA sweeps far too broadly. The defendants take the position that FACA does not apply to them because (1) the Act does not create a cause of action against a private organization, (2) the defendants do not constitute an "advisory committee" within the meaning of FACA, and (3) the documents sought are unavailable under certain FOIA exemptions incorporated into FACA. Third and finally, the defendants raise two constitutional arguments in support of dismissal: that application of FACA in this instance violates both the separation of powers doctrine and the defendants' first amendment rights of speech and association because it interferes with the President's appointment power and requires the Court to "determine by judicial decree the persons with whom members of the Committee may associate [and] ... what the Committee [shall] say[ ]." Motion to Dismiss at 23.

■ There can be but little question that the defendants have raised serious questions about the constitutionality of the plaintiff's proposed application of FACA. In those instances where a "serious doubt of constitutionality" has been raised concerning a statute, a court must "first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *International Ass'n of Machinists v. Street,* 367 U.S. 740, 749–50, 81 S.Ct. 1784, 1789–90, 6 L.Ed.2d 1141 (1961).

The analysis begins, therefore, by addressing the defendants' standing and statutory construction arguments. Resolution of these threshold issues may obviate the need for determination of the defendants' constitutional contentions.

### A. *Standing*

■ Section 5(b) of FACA states in pertinent part that:

In considering legislation establishing, or authorizing the establishment of any advisory committee ... [a]ny such legislation shall—

(1) contain a clearly defined purpose for the advisory committee;

(2) require the membership of the advisory committee to be fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee;

(3) contain appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment.

The defendants contend that the plaintiff lacks standing to assert a claim under section 5(b) because "[w]hatever interest [the] plaintiff has in the 'composition of the federal judiciary'—as well as [in] the balance and objectivity of [the] defendants' fact-finding and evaluation processes— ... is an interest that is shared by every resident of this country." Motion to Dismiss at 13.

The defendants take the position that while section 5(b) does require a fair balance in an advisory committee's membership, WLF has failed to demonstrate a particularized injury to its own organization. Moreover, they point out, the relief sought by the plaintiff for the alleged section 5(b) violation is "too remote" and too "speculative" to confer standing:

> Assuming *arguendo* that this Court had the constitutional power to grant the requested relief, the necessary remedial tools are not available to the Article III branch of government. Just how would WLF have this Court go about achieving the balance plaintiff seeks? Who is to determine at what point the Court has gone far enough in "recompos[ing] the membership of the Committee so that it is fairly balanced ..."? (Complaint ¶ 67(d)(3).) The appropriate remedies for alleged imbalances of that kind lie not with the courts, but with the political branches and with the private organizations themselves.

Motion to Dismiss at 14 n. 1.

The standing argument raised by the defendants has recently been rejected by this Circuit. In *Physician's Education Network, Inc. v. HEW,* 653 F.2d 621, 622–23 (D.C.Cir.1981), the Court strongly suggested that a plaintiff denied actual representation on an advisory committee would have standing under section 5(b) of FACA. The Court of Appeals did not distinguish between requirements for standing under section 5 and requirements for standing under section 10 of the Act.[2] Subsequently, in *National Anti-Hunger Coalition v. Executive Committee,* 557 F.Supp. 524 (D.D.C.), *aff'd,* 711 F.2d 1071 (D.C.Cir.1983), the District Court concluded that the plaintiffs in that case did not have standing to challenge committee membership under section 5(b) and question compliance with the procedures of section 10. 557 F.Supp at 527. The Court relied on *Physician's Education Network* for the proposition that no distinction existed between the standing requirements of section 5 and section 10. On appeal, the Court of Appeals agreed:

> In *Physicians' Education Network,* we found that the plaintiff lacked standing to challenge the "balance" of an advisory committee because there was no likelihood that the relief requested would redress the complained-of economic injury. But, in the course of doing so, we observed that the plaintiff did "not allege that it sought and was denied participation in the panel's meetings, or that it sought and was denied representation on the panel itself. Allegations of this kind have been found sufficient in other cases to support standing to invoke the provi-

**2.** The defendants apparently do not challenge the plaintiff's standing to assert a claim under section 10 of FACA. That section states in pertinent part that:

"(a)(1) Each advisory committee meeting shall be open to the public.

"(2) Except when the President determines otherwise for reasons of national security, timely notice of each such meeting shall be published in the Federal Register, and the Administrator shall prescribe regulations to provide for other types of public notice to insure that all interested persons are notified of such meeting prior thereto.

"(3) Interested persons shall be permitted to attend, appear before, or file statements with any advisory committee, subject to such reasonable rules or regulations as the Administrator may prescribe.

"(b) Subject to section 552 of title 5, United States Code, the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying at a single location in the offices of the advisory committee or the agency to which the advisory committee reports until the advisory committee ceases to exist.

....

"(e) There shall be designated an officer or employee of the Federal Government to chair or attend each meeting of each advisory committee. The officer or employee so designated is authorized, whenever he determines it to be in the public interest, to adjourn any such meeting. No advisory committee shall conduct any meeting in the absence of that officer or employee.

"(f) Advisory committees shall not hold any meetings except at the call of, or with the advance approval of, a designated officer or employee of the Federal Government, and in the case of advisory committees (other than Presidential advisory committees), with an agenda approved by such officer or employee."

sions of the [FACA] against an agency."
653 F.2d at 623 (footnote omitted).

As the Government points out, the cases on which we relied in *Physicians' Education Network* involved attempts to enforce rights conferred by § 10 of the Act; unlike § 10, the Government argues, § 5 confers no specific right on anyone, and a violation of the latter provision does not give rise to an injury-in-fact.

. . . .

Like the District Court, however, we can find "no distinction between requirements under § 5 and requirements under § 10 of the Act" for purposes of standing. 557 F.Supp. at 527. Section 5, to be sure, confers no cognizable personal right to an advisory committee appointment. But, the legislative history makes clear, the "fairly balanced" requirement was designed to ensure that persons or groups directly affected by the work of a particular advisory committee would have some representation on the committee. *See* S.Rep. No. 1098, 92d Cong., 2d Sess. 9 (1972); H.R.Rep. No. 1017, *supra* note 2, at 6. When the requirement is ignored, therefore, persons having a direct interest in the committee's purpose suffer injury-in-fact sufficient to confer standing to sue.

The plaintiff here has pleaded sufficient injury to confer standing under section 10. *See* Complaint, ¶¶ 35–40. Yet it is also clear that the plaintiff has asserted that the Standing Committee is consulting on a regular basis with liberal public interest groups to the exclusion of conservative public interest organizations. *See id.* ¶ 25. Arguing that the "informational" injury

that it has suffered is causally related to an imbalanced membership, *Id.* ¶¶ 3(b), 26, 65, 66, 67, WLF in effect contends that the Section 5(b) violation has contributed to the exclusion of WLF from the ABA's judicial selection process. In short, the harm alleged from the section 5(b) violation is no less direct than that asserted under the section 10 claim. Holding both claims to the same standard, as this court must under *Anti-Hunger Coalition*, it is not possible to conclude that the plaintiff lacks standing for purposes of one claim, but not for the other. To the extent that WLF has charged that it has been "directly affected" by the lack of balance on the ABA Standing Committee, it is entitled to assert a section 5(b) violation. There is no reason to believe that the relief sought by the plaintiff—recomposing the membership to include more conservative members, or allowing WLF to attend meetings—would not resolve the imbalance alleged.[3]

### B. *Applicability of FACA*

Having established that the plaintiff has standing to assert the claims alleged under FACA, the question remains whether WLF's cause of action is authorized by the statute it invokes.

█ The Federal Advisory Committee Act sets out a "comprehensive scheme" designed "to control the creation and operation of advisory committees" within the executive branch. *Center for Auto Safety v. Cox,* 580 F.2d 689, 692 (D.C.Cir.1978). The central purpose of the Act is to "control the advisory committee process and to open to public scrutiny the manner in which government agencies obtain advice from private individuals and groups." *HLI Lordship Indus., Inc. v. Committee for*

---

**3.** The defendants rely primarily on two cases, *Mulqueeny v. National Comm'n on the Observance of Int'l Women's Year, 1975,* 549 F.2d 1115 (7th Cir.1977), and *Metcalf v. National Petroleum Council,* 553 F.2d 176 (D.C.Cir.1977), to support their position that the plaintiff lacks standing. *Mulqueeny,* however, is a Seventh Circuit case, and regardless whether the holding is applicable, the holdings of this Circuit must take precedence. *Metcalf* is a D.C. Circuit case, but predates both *Physician's Education Network* and *Anti-Hunger Coalition.* In addition, *Metcalf*

involved alleged harms that were found to be "speculative and conjectural *in the purest sense.*" 553 F.2d at 186 (emphasis added). That is, it was not clear from the plaintiff's complaint whether the actions allegedly undertaken by the defendant would actually result in harm to the plaintiff. While consumer injury was asserted, no monetary losses were alleged. 553 F.2d at 186 n. 109. Here, the plaintiff has adequately pleaded "injury-in-fact" from the alleged denial of its ability to contribute to the selection process.

*Purchase From the Blind,* 615 F.Supp. 970, 978 (E.D.Va.1985); *see* 5 U.S.C.App. 2 § 2.

FACA defines an advisory committee as: any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof (hereafter in this paragraph referred to as "committee"), which is—

(A) established by statute or reorgnization plan, or

(B) established or utilized by the President, or

(C) established or *utilized by one or more agencies,* in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government....

5 U.S.C.App. 2 § 3(2) (emphasis added). The plaintiff has alleged that the ABA Standing Committee is a "preferred" source of advice to the President and the Department of Justice, *see* 41 C.F.R. § 101–6.1004(h)(2) (only committees that are "preferred" sources of advice are covered by FACA), and that the Committee provides advice on "issues" before the Department of Justice, *see* 41 C.F.R. § 101–6.1003 (advisory committee "utilized" by government defined as one from which government obtains advice on a specific "*issue* or policy") (emphasis added). While the Committee does not disclose the content of its report, plaintiff alleges that the final recommendation is a form of information or advice that is passed on to the executive branch. Accepting all these factual allegations as true, as the Court must for purposes of the pending motion, *see Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), it is not possible to find at this early stage in the proceedings that the Committee does not satisfy the requirements of 5 U.S.C.App. 2 § 3(2)(C) and 41 C.F.R. §§ 101–6.1003, 101–6.1004. Thus, for the purpose of deciding the motion to

dismiss, the Court must assume that the ABA Standing Committee is an "advisory committee" within the meaning of FACA.[4]

The more important question concerns whether the Act can be used by a private party as the basis for a cause of action against another private party. The defendants argue that no court has ever held that a "pre-existing" private group, like the ABA Standing Committee, can be sued by another private group under FACA.

The case law in this Circuit supports the defendants' position. In *Center for Auto Safety,* 580 F.2d 689, a private party brought suit against a governmental official (the Federal Highway Administration) to establish a private hired party's status as an "advisory committee" to the Federal Highway Administration. In holding that the third party was an advisory committee within the meaning of FACA, the Court of Appeals noted that FACA did not regulate the putative advisory committee; to the contrary, the Court reasoned, the Act regulated the government's *use of the third party as an advisory committee. Id.* at 693.

▇▇▇ The distinction drawn by the Court is of critical importance. If the Act regulates the government's *use* of the advisory committee and not the committee itself, it follows that the proper defendant in a suit brought to enforce the Act is the government, not the advisory committee "utilized" by the government. It is the government that has allegedly breached the requirements of the Act in its use of an advisory group, not the committee. Phrased differently, it is the *government's* involvement with the committee that triggers the Act, not actions of the committee taken independently of the government. The Act is designed to ensure that the *government* enforces certain procedures, and that the *government* takes certain precautions when it uses a pre-existing group

4. In view of plaintiff's recently-filed related action against the Justice Department, *see* note 1, *supra,* the Court wishes to emphasize that it is in no way making a final determination or finding on the question of whether the ABA Standing Committee is comprehended by FACA's definition of an "advisory committee." Rather, the Court is simply assuming the Standing Committee is so comprehended for purposes of deciding this motion.

in an advisory capacity. As the Court of Appeals in *Center for Auto Safety* stated, "[w]hen an administrator establishes or utilizes an advisory committee, *he* must comply with the provisions of the Act...." 580 F.2d at 693 (emphasis added). The proper remedy for a violation of FACA, therefore, is an order requiring the *government* either to cease its undertakings with the advisory committee. or to ensure that the advisory committee is brought into compliance with the Act. To the extent that an advisory committee utilized by the government is not regulated by FACA, it cannot be held to have breached FACA. Under these circumstances, remedial relief or a suit directed against the Committee would be inappropriate.

This point is best illustrated by the language of the Act itself. Section 8(b) of the Act specifies that the "head of each agency which has an advisory committee shall designate an Advisory Committee Management Officer who shall ... assemble and maintain the reports, records, and other papers of any [advisory] committee during its existence...." The provision also states that the Advisory Committee Management Officer shall carry out public information obligations "with respect to such reports, records, and other papers" under 5 U.S.C. § 552. 5 U.S.C.App. 2 § 8(b). Section 8(b) essentially places control of documents, papers, and reports used by the Committee to communicate its advice or recommendations in the control of the government. By requiring government, as opposed to committee, control of documents, it would appear that the drafters of FACA envisioned that an aggrieved party seeking recourse under the Act would "bring suit for injunction" against the government. *See FACA Sourcebook,* Cong.Rec.S. 2064 at 150 (remarks of Sen. Percy, suggesting that a party's only recourse under FACA would be to bring a suit for injunction.) [5]

A similar argument can be made based on sections 7, 8, and 13 of the Act. Each of these sections sets forth actions that must be taken by government officials. Enforcement of these sections would necessarily require an injunctive order against a *government* official, not the Committee. Indeed, even establishment of the advisory committee in the first instance under section 9 requires specific action by a federal official. *Accord Food Chemical News, Inc. v. Davis,* 378 F.Supp. 1048, 1051 (D.D.C.1974) (where government utilizes advisory committee, government must charter and establish the committee in compliance with FACA).

■ The defendants' interpretation of FACA is further buttressed by an important pragmatic consideration: Were suit permitted directly against a pre-existing private group utilized by the government for advice, FACA would effectively become a vehicle for forcing private organizations to turn over files or open meetings to other private parties. Clearly, FACA was not enacted with this purpose in mind. As discussed above, the Act is designed to regulate the government's *use* of a private group *in its capacity* as an advisory committee. Thus, documents disclosed to the government as the basis for advice may fall within the purview of the statute. Nothing in the Act, however, suggests that either the government or a private party can exercise control over *all* aspects of a pre-existing group's activities, or that such a group subjects itself to full disclosure of all its records and meetings simply by agreeing to serve as an advisory committee.

The very fact that section 8(b) of the Act mandates the selection of an Advisory Committee Management Officer to "exercise control and supervision" over the committee and to "assemble and maintain" documents generated and disclosed by the committee in its capacity as an advisory

5. *Cf. Federal Election Comm'n v. National Conservative Political Action Comm.,* 470 U.S. 480, 105 S.Ct. 1459, 84 L.Ed.2d 455 (1985) (private suit under Presidential Election Campaign Fund

Act properly brought against FEC—the government agency responsible for enforcing the Act—but not properly brought against non-governmental parties).

body suggests that matters *not* taken under the supervision or control of the Management Officer are not covered under FACA and are thus not subject to disclosure. Conversely, those matters over which the Advisory Committee has relinquished control can potentially be obtained by suing the government directly. Accordingly, as Section 8(b) indicates, suit against the government is adequate to give a private litigant the full measure of relief permitted under FACA.

█ While plaintiff is correct in arguing that the courts have recognized a private right of action under the Act, in no case has a court permitted a private party to assert a cause of action against a private, pre-existing group that has not been established, appointed, and financed by the government.[6] *See, e.g., HLI Lordship Indus.,* 615 F.Supp. 970; *Public Citizen v. Commission on the Bicentennial of the U.S. Constitution,* 622 F.Supp. 753 (D.D.C. 1985). Where a committee has been established by the government, of course, the concerns discussed above about permitting suit directly against the advisory committee are no longer applicable. To the extent that an advisory committee is not pre-existing, is created by the government, and possesses no independent charter or purpose other than its role as a government-created and sponsored advisory committee, the committee is, for all intents and purposes, an extension of the government. At that point the cautious distinctions drawn by the Court of Appeals between "regulation of a committee" and "regulation of the government's use of the committee," and the

pragmatic concerns involved in the direct suit of an advisory committee are no longer relevant to the debate over whom the private litigant should be permitted to sue. If the advisory committee itself is a government entity, the distinctions necessarily blur, and it becomes less likely that material created and maintained by such a committee would not be covered under FACA. Regardless which party is sued, it is the government—the regulator—that is effectively still the defendant.

### III.

Having "ascertain[ed] ... [that] a construction of [FACA] is fairly possible by which the constitutional question[s] may be avoided," *International Ass'n of Machinists,* 367 U.S. at 749–50, 81 S.Ct. at 1789–90, the constitutional questions raised by the defendants need not be addressed.[7] For the reasons set forth above, the Court finds that FACA does not authorize the cause of action asserted by WLF.

Accordingly, the defendants' motion to dismiss is, this 26th day of November, 1986, hereby granted.

IT IS SO ORDERED.

█

---

6. Even were the Court to accept the plaintiff's argument that a private right of action exists under FACA regardless whether a private party is being sued, section 5 of FACA applies only to government officials and advisory committees *established* (as opposed to utilized) by the government. 5 U.S.C.App. 2 § 5(c). WLF does not argue that the ABA Standing Committee was established or created by the government. WLF appears to concede that the Committee is a private party that has been "utilized" by the government. It is difficult to understand, therefore, how the plaintiff justifies the section 5 claim even under its broadly stated "private right of action" approach.

7. Because the Court has found that FACA does not permit suit by a private party directly against another pre-existing private party, the Court also need not address the defendants' statutory argument that the information sought by the plaintiff is exempt from disclosure under FOIA exemptions 5 and 6. *See* Motion to Dismiss at 41–43. For these same reasons, the Court need not address defendants' motion to dismiss premised on the theory that the ABA Standing Committee is not an entity capable of being sued.