**PUBLIC CITIZEN, Plaintiff,**

v.

**COMMISSION ON THE BICENTEN-NIAL OF the UNITED STATES CONSTITUTION, Defendant.**

**Civ. A. No. 85–3233.**

United States District Court,
District of Columbia.

Nov. 19, 1985.

Patti Goldman, Alan B. Morrison, David C. Vladeck, Public Citizen Litigation Group, Washington, D.C., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., Charles Sorenson, Thomas Millet, Gena E. Cadieux, Attys., U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendant.

MEMORANDUM

OBERDORFER, District Judge.

I.

Plaintiff in this action is Public Citizen, a non-profit public interest organization. Defendant is the Commission on the Bicentennial of the United States Constitution (Commission), created by Congress in 1983 to facilitate the celebration of the 200th anniversary of the United States Constitution. Pub.L. 98–101, 97 Stat. 719 (1983). Its

authority expires on December 31, 1989. Pub.L. 98–101 at § 7.

Plaintiff charges that the Commission has violated, and intends at its meeting on November 24–25, 1985, to violate, the Federal Advisory Committee Act (FACA), 5 U.S.C.App. I (1982). The FACA requires that an advisory committee hold open meetings and give reasonable advance notice of its meetings. 5 U.S.C.App. I, § 10(a)(1), (2); 41 C.F.R. §§ 101–6.1002(d) (1985). It is undisputed that the Commission has not complied with the FACA requirements and does not feel itself to be bound by the FACA provisions. Defendant urges that the Commission is privileged to conduct its business in public or behind closed doors and has chosen the latter. The sole issue for judicial resolution is whether the Commission is an advisory committee within the meaning of the FACA which would require the Commission to open its meetings.[1]

The matter is before the Court on plaintiff's motion for a preliminary injunction and defendant's motion to dismiss or for summary judgment. Plaintiff suggests that the Court treat the motions as dispositive cross-motions for summary judgment. The issues presented are purely legal issues and no material facts are in dispute. Accordingly, an accompanying order will resolve the controversy by granting defendant's motion and dismissing the complaint.

The case involves the intersection of two federal statutes. One, the FACA, imposes restrictions on advisory committees, among other things, requiring them to hold open meetings. Under the FACA, an advisory committee is defined as:

any committee, board, commission, council, conference, panel, task force, or other similar group, . . . which is—

(A) established by statute or reorganization plan, or

(B) established or utilized by the President, or

(C) established or utilized by one or more agencies,

in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government.

5 U.S.C.App. I § 3(2). The other statute is Public Law 98–101 by which Congress created the Commission. The Commission is composed of twenty-three members. Three members are designated by the statute: the Chief Justice of the United States, the President pro tempore of the Senate, and the Speaker of the House, or their designees. The President appoints the remaining twenty members and designates the Chairman. The members designated by the President include senators, congressmen, and federal judges, as well as private citizens.

## II.

### A.

Plaintiff argues that "the Commission is clearly an advisory committee covered by FACA." Memorandum In Support of Plaintiff's Motion For a Preliminary Injunction (Plaintiff's Mem.) at 6 (filed October 23, 1985). Plaintiff relies on the statutory requirement that:

Within two years after the date of enactment of this Act, the Commission shall submit to the President and each House of the Congress and the Judicial Conference of the United States a comprehensive report incorporating specific recommendations of the Commission for commemoration and coordination of the bicentennial and related activities. Such report shall include recommendations for publications, scholarly projects, conferences, programs, films, libraries, exhibits, ceremonies, and other projects, competitions and awards, and a calendar of major activities and events planned to commemorate specific historical dates. Each year after such comprehensive report, the Commission shall submit an an-

---

**1.** Plaintiff also filed a claim under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.* (1982). In a telephone conference on Novem- ber 19, 1985, the parties stipulated that the FOIA issue is moot.

nual report to the President, each House of the Congress, and the Judicial Conference until such Commission terminates. Pub.L. 98–101 at § 6(e). According to plaintiff, the report to the President would necessarily involve advice to him and to government agencies. Plaintiff also relies on the President's statement as he signed the Act into law:

I welcome the participation of the Chief Justice, the President pro tempore of the Senate, and the Speaker of the House of Representatives in the activities of the Commission. However, because of the constitutional impediments contained in the doctrine of separation of powers, I understand that they will be able to participate only in ceremonial or advisory functions of the Commission, and not in matters involving the administration of the act. Also, in view of the incompatibility clause of the Constitution, any Member of Congress appointed by me pursuant to section 4(a)(1) of this act may serve only in a ceremonial or advisory capacity.

Plaintiff's Mem. at 3 (citing Presidential Statement Upon Signing S.118 Into Law (Sept. 29, 1983), *in* Weekly Compilation of Presidential Documents: Administration of Ronald Reagan 1362 (1983)). According to plaintiff, this statement is further evidence that the Commission's role is advisory. Finally, plaintiff refers to § 6(a)(1) of the public law which created the Commission, which directs the Commission to plan and develop a limited number of projects to be undertaken by the federal government, a task which plaintiff argues requires the Commission to advise federal governmental agencies.

Plaintiff argues that the term "advisory committee" should be interpreted broadly, citing *National Nutritional Foods Assoc. v. Califano*, 603 F.2d 327, 334–36 (2d Cir. 1979); *Center for Auto Safety v. Tiemann*, 414 F.Supp. 215 (D.D.C.1976), *affd. in part and remanded in part on other grounds sub nom. Center for Auto Safety v. Cox*, 580 F.2d 689 (D.C.Cir.1978). Plaintiff also contends that even if the Commis-

sion has some administrative duties, these are severable from the meetings which are clearly advisory. *Cox, supra*, 580 F.2d at 694.

Plaintiff argues that the Commission fits the definition of "advisory committee" in the FACA for a number of reasons. First, it argues that the Commission was "established" as an advisory committee within the meaning of § 3(2)(A) of the FACA. Plaintiff contends that "the Commission is charged with rendering 'specific recommendations' to the President and others 'for commemoration and coordination of the bicentennial and related activities.'" Plaintiff's Mem. at 7 (citing Pub.L. 98–101 at § 6(e)). Plaintiff also argues that the Commission meets the requirements of FACA §§ 3(2)(B) and (C) as well, in that the Commission renders advice "to be *utilized* by one or more federal agencies, as well as the President." Plaintiff's Mem. at 8 (emphasis in original).

Plaintiff also argues that unless the Commission is an advisory committee, it has no legal existence. Plaintiff contends that since the Commission is obviously a governmental body, it must be either an agency or an advisory committee. But, the Commission cannot be an agency as that term is defined in the Administrative Procedure Act, 5 U.S.C. § 551(1), because its members represent all three governmental branches, and were appointed by both Congress and the President. U.S. Const. art. I, § 6; art. II, § 2, cl. 2. Plaintiff relies upon *Buckley v. Valeo*, 424 U.S. 1, 118–41, 96 S.Ct. 612, 681–92, 46 L.Ed.2d 659 (1976). In that case, the Supreme Court ruled that the Federal Election Commission could not constitutionally carry out executive functions, make rules or initiate prosecutions of election law violations because some of its members were appointed by Congress, and not by the President as required by the Appointments Clause of the Constitution. U.S. Const. art. II, § 2, cl. 2. Because of the holding in *Buckley*, plaintiff claims that the Commission should be defined as an advisory committee since any other decision would render the statute which cre-

ated the Commission unconstitutional. In support of its proposed interpretation, plaintiff points out:

> Both Congress and the President are well aware of these basic constitutional principles, and it strains credulity to imagine that, after careful deliberation, they created a body to commemorate the Constitution which is clearly unconstitutional.

Plaintiff's Reply Memorandum In Support of Plaintiff's Motion for a Preliminary Injunction and in Opposition to Defendant's Motion for Summary Judgment or to Dismiss at 6 (Plaintiff's Reply) (filed Nov. 14, 1985).

### B.

The bulk of the government's argument focuses on demonstrating that the Commission is not an advisory committee. First, defendant argues that the Commission was not established as an advisory committee within the meaning of the FACA. Defendant quotes the specific listed duties of the Commission, which are to:

> (1) plan and develop activities appropriate to commemorate the bicentennial of the Constitution, including a limited number of projects to be undertaken by the Federal Government seeking to harmonize and balance the important goals of ceremony and celebration with the equally important goals of scholarship and education;
>
> (2) encourage private organizations, and State and local governments to organize and participate in bicentennial activities ...;
>
> (3) coordinate, generally, activities throughout all the States; and
>
> (4) serve as a clearinghouse for the collection and dissemination of information about bicentennial events and plans.

Pub.L. 98–101 at § 6(a). The administrative powers and authority of the Commission include authority to:

> appoint publicly paid staff; procure supplies, services, property and make contracts to undertake its projects; obtain financial and administrative services from the General Services Administration; accept donations of property, money, and services and promulgate regulations concerning those donations; use the United States mails as do "other departments and agencies of the United States"; and design an official bicentennial logo and promulgate regulations prescribing its use and penalties for unauthorized use.

Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a Preliminary Injunction and in Support of Defendant's Motion to Dismiss or for Summary Judgment (Defendant's Mem.) at 4–5 (filed Nov. 8, 1985) (citing Pub.L. 98–101 at § 5).

According to defendant:

> the Act creates the Commission as the federal governmental body to implement the Act, and not to advise the President or federal agencies on how to implement the Act.

Defendant's Mem. at 14. Defendant quotes the Senate Judiciary Committee's Report on S. 118, the bill which established the Commission, in support:

> [T]he Commission should ... develop a plan to choose and carry out a limited number of projects to be undertaken by the Commission on behalf of the Federal Government.... The ultimate choice of the limited number of projects to be undertaken by the Federal Government is to be made by the Commission.

S.Rep. No. 68, 98th Cong., 1st Sess. 41 (1983). The government argues that the requirement that the Commission make reports to the President along with Congress and the Judicial Conference is simply a general reporting requirement relating to all three branches of government, and does not require the Commission to provide advice. Pub.L. 98–101 at § 6(e). Defendant further argues that the term "recommendations" in the reporting requirement refers to the recommendations given by the Commission to state and local governments and private entities, not recommendations to the federal government.

Second, defendant argues that the Commission has not been "utilized" as an advisory committee within the meaning of FACA § 3(2)(B) or (C). This FACA provision, defendant argues, was meant to refer to use by the President, government agencies or groups outside the government, 41 C.F.R. § 101–6.1003, not groups created by the government.

Third, defendant argues that even if the Commission has some advisory functions, it is, nevertheless, primarily operational. Implementing regulations of the FACA provide that the following type of group is not covered by the Act:

> Any committee which is established to perform primarily operational as opposed to advisory functions, except that such committee may be covered by the Act if it becomes primarily advisory in nature.

41 C.F.R. § 101–6.1004(i). A statement in the Senate Report supports this implementing provision:

> [T]here are instances in which advisory committees also have operational functions, or cases in which a primarily operational unit is termed "commission" or "council," and is established as a quasi-independent unit reporting to the President directly, or through a Cabinet officer. Some, like the Advisory Committee on Opportunities for Spanish-Speaking People, and the National Commission on Productivity, perform both operational and advisory functions. In such cases, it is the responsibility of the Office of Management and Budget to determine whether such committees are primarily operational, rather than advisory. If so, they would not fall under the ambit of this bill.[2]

S.Rep. 1098, 92d Cong., 2d Sess. 8 (1972). Defendant attaches a recent district court decision from the Eastern District of Virginia which applies this distinction. That court found an organization designated by an agency to aid the agency in its function of listing items which could be purchased from disabled persons to be "primarily op-

erational." As to the duties found operational, the court stated that the organization:

> investigates what items may be suitable for procurement from the blind and handicapped, evaluates the qualifications and capabilities of the workshops who offer commodities and services, distributes government orders for items off the procurement list among various qualified workshops, maintains the necessary administrative records for the JWOD Act program, and monitors and inspects the various participating workshops in order to insure compliance with the Act.

*HLI Lordship Industries, Inc. v. The Committee For Purchase From the Blind and Other Severely Handicapped,* 615 F.Supp. 970, 978–79 (E.D.Va.1985). Defendant argues that the Commission's duties to "plan", "encourage," and "coordinate" are even more clearly operational.

Defendant sidesteps the constitutional issue raised by plaintiff. Defendant recognizes the argument in a footnote, and admits that "it cannot be doubted that the Commission is part of the federal government." Defendant's Mem. at 21 n. 14. Defendant argues that the only question before the Court is whether the Commission is an advisory committee, stating that "the Court need not reach the issue of whether the Commission can be an agency." *Id.* In fact, the government contends that the Court cannot reach the issue because plaintiff lacks standing to assert the claim since it does not allege any concrete injury suffered from agency action.

### III.

#### A.

On its face, Public Law 98–101 does not appear to create the Commission as an advisory committee. The Commission's listed duties are all active: to "plan and develop activities," "encourage [others] to organize and participate," "coordinate . . . activities," and "serve as a clearinghouse."

---

**2.** Neither party has indicated whether the OMB has made such a determination, nor has either

party brought this OMB responsibility into issue.

Pub.L. 98–101 at § 6. There is a list of considerations for "planning and implementing appropriate activities." Pub.L. 98–101 at § 6(b). The Commission is not told to render advice itself. Rather, the statute directs the Commission to "seek the cooperation, advice, and assistance from both private and governmental agencies." Pub.L. 98–101 at § 6(c). And, "in carrying out the purposes of this Act" the Commission may "delegate authority to State advisory commissions to assist in implementing this Act." Pub.L. 98–101 at § 6(d). The Act also gives the Commission authority to contract for supplies, services and property, or to accept them as contributions. Pub.L. 98–101 at §§ 5(f), (h).

The legislative history of the public law confirms this interpretation of the Commission's duties as primarily operational. In fulfilling its first duty, the Commission is to "develop a master plan" for nationwide activities for state, local and private entities—not the federal government—to execute. S.Rep. No. 68 at 40. Although on its face the statute appears to authorize the Commission to advise the federal government by planning and developing "a limited number of projects to be undertaken by the Federal Government," Pub.L. 98–101 at § 6(a)(1), the legislative history states very clearly that Congress intended the Commission not only to develop these plans, but also to carry them out. The Senate Report provides:

> The Commission should also develop a plan to choose and carry out a limited number of projects to be undertaken by the Commission on behalf of the Federal Government.

S.Rep. No. 68 at 41. Examples of these projects include "two or three significant projects which can be accomplished within the resources of the Commission," such as a television program tracing the lives of the men who signed the Constitution. The Senate Report confirms that the other three duties of the Commission are similarly active.

The reporting requirement in § 6(e) does not transform the otherwise active Commission into an advisory committee. The legislative history makes clear that the "recommendations" in § 6(e) refer to recommendations from the Commission to state, local and private entities. The Commission is charged with planning only "two or three" significant federal projects, and these it is empowered to undertake itself. S.Rep. No. 68 at 41. The lengthy list of proposed activities thus clearly refers to recommendations to other entities.

For the same reasons that the Commission was not "established" as an advisory committee, it is not "utilized" as one. It does not render advice to the federal government, but instead fulfills its substantive and active duties as listed in its creating statute. The Commission is thus not an advisory committee within the meaning of the FACA.

### B.

■ The parties agree that the sole issue before the Court is whether the Commission is an advisory committee as defined in the FACA. Plaintiff argues, however, that the potential constitutional problem posed by finding the Commission not subject to the FACA should flavor the Court's interpretation of the Commission's status. But, the very case cited by plaintiff in support of its theory of interpretation recognizes that:

> [c]onsiderations of propriety, as well as long-established practice, demand that [a court] refrain from passing upon the constitutionality of an act of Congress unless obliged to do so in the proper performance of [its] judicial function, when the question is raised by a party whose interests entitle him to raise it.

*Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 341, 56 S.Ct. 466, 480, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (quoting *Blair v. United States,* 250 U.S. 273, 279, 39 S.Ct. 468, 470, 63 L.Ed. 979 (1919)). Here, the constitutionality of the

public law which created the Commission is not an issue directly before the Court. Moreover, the conclusion that the Commission is not advisory within the precise terms of the FACA need not affect the decision of a proper case testing the Commission's authority to operate under the leadership of members not appointed by the President. Because the Commission is charged with implementing a public law, it would appear to be an "authority of the Government of the United States." 5 U.S.C. § 551(1). But, the duties of the Commission are primarily ceremonial. Its term is finite, ending when the bicentennial celebration ends.[3] Pub.L. 98–101 at § 7. Its duties are not such "significant governmental dut[ies]" as are law enforcement, "rulemaking," issuance of "advisory opinions, or determinations of eligibility for funds" which caused the Federal Election Commission to be deemed unconstitutional in *Buckley v. Valeo, supra,* 424 U.S. at 140, 96 S.Ct. at 692. In view of these considerations, the defendant is entitled to a summary judgment without consideration of the constitutional concerns expressed by plaintiff.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this <u>19th</u> day of November 1985, hereby

ORDERED: that plaintiff's motion for preliminary injunction should be, and hereby is, DENIED; and it is further

ORDERED: that defendant's motion for summary judgment should be, and hereby is, GRANTED; and it is further

ORDERED: that Count II of plaintiff's complaint should be, and hereby is, DISMISSED as moot; and it is further

ORDERED: that Count I of plaintiff's complaint should be, and hereby is, DISMISSED with prejudice.

**3.** There is some analogy to the Smithsonian Institution whose Board of Regents is created by statute to include the Vice President, the

Chief Justice, three members of the Senate and three members of the House of Representatives. *See* 20 U.S.C. § 42.