### HLI LORDSHIP INDUSTRIES, INC., Plaintiff,

v.

### The COMMITTEE FOR PURCHASE FROM the BLIND AND OTHER SEVERELY HANDICAPPED, et al., Defendants.

Civ. A. No. 86–1454–A.

United States District Court, E.D. Virginia, Alexandria Division.

March 16, 1987.

Bingham Kennedy, Barry J. Trilling, Trilling & Kennedy, Washington, D.C., for plaintiff.

Dennis E. Szybala, Asst. U.S. Atty., Alexandria, Va., Theodore C. Hirt, Felicia L. Chambers, U.S. Dept. of Justice, Federal Programs Branch, Civ. Div., Washington, D.C., for defendants, John Heyer, Office of General Counsel-LG, General Services Ad-

ministration, Washington, D.C., Sandra Guydon, Defense Personnel Support Center-GL, Philadelphia, Pa., of counsel.

## MEMORANDUM OPINION

BRYAN, Chief Judge.

This is an action seeking review of a decision by the Committee for Purchase from the Blind and Other Severely Handicapped (the Committee) made pursuant to the informal rulemaking procedures of the Administrative Procedure Act (APA), 5 U.S.C. § 553. That decision added to the Committee's "Procurement List" various military medals and medal sets [1] which the plaintiff, HLI Lordship Industries, Inc. (Lordship), a private firm, had previously sold to the government. Also included in the action are appeals by the plaintiff from denial of its requests of the Committee for access to information under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

This case has been here before, and returns in basically the same posture as its predecessor. In *HLI Lordship Industries, Inc. v. The Committee for the Purchase from the Blind & Other Severely Handicapped*, 615 F.Supp. 970 (E.D.Va.1985), this court rejected a similar challenge by Lordship to a January, 1984 decision to add those medals to the Procurement List and granted summary judgment to the Committee. That ruling was reversed on the ground that the Committee failed to provide a "concise general statement [of the regulation's] basis and purpose" as required by *State of South Carolina ex rel. Tindal v. Block*, 717 F.2d 874, 886 (4th Cir.1983), *cert. denied*, 465 U.S. 1080, 104 S.Ct. 1444, 79 L.Ed.2d 764 (1984). *HLI Lordship Industries, Inc. v. Purchase from the Blind and Other Severely Handicapped*, 791 F.2d 1136, 1139 (4th Cir.1986).

The case was remanded to this court with directions to set aside the Committee's decision to approve the addition to the Procurement List of the medal and six medal sets. Accordingly, this court on August 20, 1986 ordered removal of these items "unless and until any such medals are added to the Procurement List by a proceeding which complies with all applicable requirements of the Administrative Procedures Act, 5 U.S.C. § 553, and the Javits-Wagner-O'Day Act, 41 U.S.C. § 46 et seq." Admin.Rec. Vol. II, p. 467, Ex. 78. The court further ordered the Secretary of Defense to rescind contracts awarded to the workshop for deliveries made after October 15, 1986. *Id.*[2]

Five days after the August 20, 1986 district court order, the Committee published in the Federal Register a notice of a proposed rulemaking to add the medals once again to the Procurement List. Admin. Rec.Vol. II, p. 471, Ex. 80; 51 Fed.Reg. 30263 (1983). The notice called for comments by September 26, 1986 [3] and was published as prescribed by 41 U.S.C. § 47(a)(2) for the informal rulemaking allowed by 5 U.S.C. § 553. The proceedings ended with the publication of a final rulemaking decision on December 19, 1986, which added the medal and six medal sets to the Procurement List. Admin.Rec.Vol. II, p. 598, Ex. 109; 51 Fed.Reg. 45506 (1986). The Committee's final decision originally was published on December 3, 1986. Admin.Rec.Vol. II, p. 579, Ex. 107; 51 Fed.Reg. 43654 (1986). Apparently because of defects in the notice, it was republished on December 19, 1986.

Prompted by the December 3, 1986 decision, Lordship filed its complaint on December 11, 1986. Applications for temporary restraining orders were denied on December 11, 1986 and February 13, 1987 upon

---

**1.** A "medal" consists of a medal pendant suspended from a ribbon drape which is mounted on a bar with a pin with a safety catch. A "medal set" consists of a "medal" and a "service ribbon" which is a ribbon bar with two clutch fasteners.

**2.** Pursuant to the January, 1984 addition, the Committee had authorized Elwyn Institutes (Elwyn), a qualified workshop for the other severely handicapped, to produce those medals.

Between January 27, 1984 and October 15, 1986, Elwyn produced and shipped to the government over 600,000 of the medals on the Procurement List. March 2, 1987 Declaration of Charles W. Fletcher—I (Fletcher Dec.), ¶ 7.

**3.** At Lordship's request, the Committee extended this deadline to October 15, 1986. Fletcher Dec. —I, ¶ 8; Admin.Rec.Vol. I, p. 24, Ex. 7.

the defendants' assurance that no steps would be taken to implement the December 19, 1986 decision until the matter could be heard further. A similar assurance that no such implementation would occur prior to March 18, 1987 removed the need for the court to consider a March 6, 1987 request for a preliminary injunction. On March 6, 1987 the matter was heard on cross-motions for summary judgment.

The complaint, as amended on February 6, 1987, is in six counts:

*First:* A violation of 5 U.S.C. § 553(d) because the publication of December 3, 1986 made the decision effective immediately rather than 30 days thereafter as required, in the absence of good cause, by that subsection.

*Second:* A denial of the right to participate in the rulemaking as required by 5 U.S.C. § 553(c).

*Third:* An improper denial by the Committee of Lordship's requests under FOIA for agency records.

*Fourth:* A failure by the Committee to consider, as required by the APA and the Javits-Wagner-O'Day Act (JWOD), the relative benefits which might result from approval or disapproval of the Committee's proposal.

*Fifth:* A failure of the Committee to consider Lordship's October 31, 1986 alternative proposal that only four of the seven medals be added to the Procurement List; that the workshop which received contracts for those four medals be required to purchase its pendants from the last commercial provider for five years (which incidentally happens to be Lordship); and that National Industries for the Severely Handicapped (NISH) be barred from proposing additions to the Procurement List so long as the last commercial provider subcontracted to sheltered workshops sufficient work to provide a certain amount of work each year. Lordship complains that the alternative proposal was returned by the Committee as untimely although comments from others were considered after October 31.

*Sixth:* A failure by the Committee to respond to significant comments submitted by Lordship in violation of 5 U.S.C. § 553(c) and JWOD.

### December 3 Publication

As indicated before, the Committee apparently recognized that the immediate effectiveness of the proposal rendered the publication defective. Lordship asserts that it was harmed by the defective December 3 publication because in response to that publication the Department of Defense withdrew an invitation for bids on two of the seven medals on which Lordship had intended to submit bids. Such speculative harm is not the sort of prejudice which negates the curative effect of the republished notice.

### Denial of Right to Participate, Failure to Consider Relative Benefits, and Failure to Respond to Lordship's Comments

These arguments, contained in the Second, Fourth and Sixth Counts of the Amended Complaint, are unpersuasive because each suffers from certain basic underlying fallacies. First, and most importantly, the Committee, in its detailed and thorough statement of basis and purpose, *did* consider and address Lordship's challenge to the credibility of the Elwyn data and it *did* consider the relative benefits which would result from approval or disapproval of the Committee's proposal. Lordship asserts that "[t]he fundamental question raised by its comments ... was whether adoption of the proposal would ultimately enhance employment opportunities for blind and handicapped persons...." Memo. in Support of Pltf's Motion for Sum. Judmt. at 18. The Committee considered this question. It just did not resolve it in a way that satisfies Lordship.

Second, Lordship is seeking to turn this informal rulemaking procedure into an adversary one, and to use the FOIA as its discovery mechanism. In effect, Lordship wants an opportunity to cross examine each figure used by Elwyn in its submissions. In an informal rulemaking, how-

ever, such cross examination is not required. *United States v. Florida East Coast Ry. Co.,* 410 U.S. 224, 240, 93 S.Ct. 810, 818, 35 L.Ed.2d 223 (1973); *Ethyl Corp. v. EPA,* 541 F.2d 1, 54 n. 124 (D.C. Cir.1976).

■ This is true for good reason. The informal rulemaking process, as opposed to the "formal rulemaking" governed by §§ 556 and 557 of the APA, does not embody the features of a judicial trial. It is more legislative than adjudicatory in that it is designed to generate a maximum of information to enable an agency, or as in this case, the Committee, to make public policy. As the Ninth Circuit has pointed out:

> It is apparent that in rulemaking hearings the purpose is to permit the agency to educate itself and not to allow interested parties to choose the issues or narrow the scope of the proceedings. The purpose of the notice is to allow interested parties to make useful comment and not to allow them to assert their "right" to insist that the rule take a particular form.

*Pacific Coast European Conference v. United States,* 350 F.2d 197, 205 (9th Cir. 1965).

The process is clearly not intended to resolve disputes between individual parties; indeed, to require a full adjudicatory hearing would necessitate a loss of the "inherent advantages of informal rulemaking." *Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council, Inc.,* 435 U.S. 519, 547, 98 S.Ct. 1197, 1213, 55 L.Ed.2d 460 (1978).

Third, Lordship's challenge to the Committee's decision is based, at least in part, on a view of the explanation required of the Committee that is contrary to the holding in this Circuit. Lordship would have the Committee give "an exhaustive explanation of [its] reasoning for adopting a rule" and "make reference(s) in the agency explanation 'to all the specific issues raised in comments.'" *State of South Carolina ex rel. Tindal v. Block, supra,* rejected these as requirements. *Id.* at 886. The Committee did not accept most of Lordship's arguments. It was not required to.

It considered most of them, and the record is not so bereft of any evidence to the contrary as to make its decision arbitrary or capricious. Differences between the Committee's conclusions and those arrived at using Lordship's calculations as to estimated standard direct labor times, the productivity factor, the number of jobs created, work subcontracted to businesses not using handicapped workers and the percentages of work performed by blind and handicapped workers, are part of the sifting process any agency must engage in to reach a decision. That the Committee relied on much or even most of Elwyn's data for its conclusions does not make those conclusions vulnerable to judicial review.

### FOIA

On August 27, 1986, counsel for Lordship submitted certain questions to the Committee regarding the Committee's policy on determining the impact on a former contractor when the current contractor was a sheltered workshop (such as Elwyn), whether the Committee considered Elwyn to be the current or most recent contractor, and how the Committee's pricing policy would apply to the new proposal. Admin. Rec.Vol. I, p. 14, Ex. 5. As part of the August 27 letter Lordship also requested, pursuant to FOIA, copies of any records relating to these questions. In addition, Lordship asked for the following:

a. all records of the Committee which relate to the statement in the notice that "the workshop plans to employ 25 severely handicapped persons in the production of the medal and medal sets;" and

b. all records of the Committee which relate to the statement in the notice that "the workshop indicated that if it were to produce the medal pendants, the additional jobs would be created."

*Id.*

On October 30, 1986 Lordship requested the following information:

(1) relating to price adjustments for the seven medals and medal sets during

the period that they were on the Procurement List;

(2) reflecting estimates by Elwyn Institutes or NISH of the time required and costs incurred in producing a pendant as compared with a complete medal; and

(3) relating to this proposal not previously provided to us.

Admin.Rec.Vol. II, p. 72, Ex. 13.

After exchanges of correspondence and additional requests, the Committee responded on November 10, 1986 with documents which deleted certain specific information, such as the amount of time Elwyn claimed it takes a non-handicapped person to produce a medal, the productivity factor used to determine the number of handicapped employees who would actually work on the medals, the wages that would be received by handicapped persons producing medals, and the extent to which funds received by the workshop would be passed through to commercial subcontractors if the proposal were approved. The Committee deleted this information on the grounds that it qualified under Exemption 4 of the FOIA as "trade secrets and commercial information which is confidential or privileged." 5 U.S.C. § 552(b)(4).

The information requested in the October 30, 1986 letter included details of Elwyn's manufacturing processes, pricing information and information related to productivity. Fletcher Dec.—II, ¶ 13. In submitting this material, Elwyn had requested that the information be kept confidential. Admin. Rec.Vol. I, p. 153, Ex. 29; see also Affidavit of Howard Landon filed March 5, 1987. On November 10, 1986, the Committee did release to Lordship documents including pricing information and information relating to the number of persons the workshop planned to employ. Admin.Rec.Vol. I, p. 73, Ex. 13. Later, on November 10 and 12, 1986, additional information was released. *Id.* at 76, 78.

Lordship asserts that the deleted material is not Exemption 4 information, attacks the timing of the material's release, and argues that the deleted material deprived it of its right to comment meaningfully.

These arguments must fail for several reasons. In the first place, the information that was provided revealed the total number of handicapped hours needed to produce the items and the number of handicapped persons the workshop anticipated employing. While not as complete as Lordship wanted, this information could allow it to make an informed comparison between its subcontracting to handicapped agencies and the direct labor Elwyn planned to employ. Second, the timing of the document production was late, but by this time the Committee obviously, and correctly, felt that it had a record adequate to hear oral presentation at its November 13, 1986 meeting and that in light of comments received during the 1984 proceeding, an adequate opportunity had been given to all parties to comment. Fletcher Dec.—I, ¶¶ 97, 103. Third, the withholding of the deleted information as confidential was clearly correct. It had been submitted as confidential. Admin.Rec.Vol. I, p. 153, Ex. 29; Landon Affidavit. Elwyn and Lordship were competitors. The type of information deleted is the type that can be used to a competitive advantage, Landon Affidavit; this point is particularly well illustrated by Lordship's own request to keep a portion of *its* submission confidential. Admin.Rec.Vol. I, p. 90, Ex. 16. Finally, Lordship again misconceives the role of the Committee in its rulemaking. This is not an adjudicatory process. Lordship is simply not entitled to the sort of information sought to enable it to engage in a full-scale adversary proceeding. What it is entitled to is an opportunity to participate in the information gathering of the Committee. Given the numerous submissions by Lordship, its oral presentation at an open hearing, and the Committee's obvious consideration of its comments and proposals, Lordship did have an opportunity to participate. This holds true even without the documents it did not receive or with the late reception of the documents it did receive.

*Lordship's Alternative Proposal*

The so-called alternative proposal of Lordship is no more than "bargaining"

**252**

with the Committee—an attempt to put the Committee on terms. It could have been rejected on that basis. As indicated in the decision, the Committee did consider the "offers" submitted by Lordship. Moreover, the Committee quite properly rejected these "offers" because to accept them and to tie the Committee's hands would have been an abdication of the Committee's responsibility to add suitable commodities and services to the Procurement List and to fulfill the objectives of JWOD. Despite Lordship's vociferous assertions to the contrary, the alternative proposal which it claims was not considered by the Committee is only slightly different than the "offers." Hence, the same reasoning would dictate rejection of the alternative proposal.

### Conclusion

The court concludes that the decision of the Committee is not arbitrary, capricious, an abuse of discretion or contrary to law; that the decision was based on a consideration of all relevant factors; that a rational basis exists for the decision; that the decision contains a detailed and adequate statement of its basis and purpose; that the plaintiff had an adequate opportunity to and in fact did participate in the rulemaking process; and that the decisions of the Committee to withhold certain information under the FOIA were in all respects proper. In light of the foregoing conclusions, the court finds it unnecessary to address the Committee's contentions that Lordship did not exhaust its administrative FOIA remedies and failed to plead § 706(2)(A) in its complaint.